# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

CORY BLAKE WEST

                Plaintiff,

vs.

CHARLES PALMER, BRAD
WITTROCK, CLINT FREDERIKSEN,
REANN JACKSON, MIKE McDONALD
and NATE REINERT,

                Defendants.

No. C14-4102-LTS

**MEMORANDUM
OPINION AND ORDER**

_____

## I.   INTRODUCTION

Presently before the Court is defendant's motion for summary judgment.  Doc. No. 25.  Plaintiff has filed a resistance (Doc. No. 26) and defendants have filed a reply (Doc. No. 27).  The plaintiff also filed a pro se supplement.  Doc. No. 29.  The motion is deemed fully submitted on the parties' written submissions.

## II.   PROCEDURAL HISTORY

West is a patient at the Civil Commitment Unit for Sexual Offenders (CCUSO), located in Cherokee, Iowa.  The patients at CCUSO "have served their prison terms but in a separate civil trial have been found likely to commit further violent sexual offenses."[1]  The State of Iowa committed West after a string of sex crime convictions, including a "conviction [which] occurred in 2008 following his guilty plea to assault

_____

[1] *Civil Commitment Unit for Sexual Offenders*, Iowa Department of Human Resources, http://dhs.iowa.gov/mhds/mental/in-patient/ccuso (January 9, 2017).

with intent to commit sexual abuse, in violation of Iowa Code §§ 708.1, 709.11, and 901A.2(2)." *In re Det. of West*, 829 N.W.2d 589 (Table), 2013 WL 988815 (Iowa Ct. App. 2013).

Since being committed to CCUSO, West has filed a variety of suits in this court. *See, e.g.*, C12-4059-DEO. West filed the above captioned case on November 14, 2014. Doc. No. 1. Senior United States District Judge Donald E. O'Brien granted West's motion to proceed in forma pauperis and his motion to appoint counsel. Doc. No. 3. Around the same time, West filed a factually related case, C14-4098-MWB. That case was a 42 U.S.C. § 1983 case against a non-governmental entity, Tyson Foods, Inc. West later voluntarily dismissed that case. C14-4098-MWB, Doc. No. 4. However, West then refiled a factually identical case as an employment discrimination action. C15-4052-CJW. The parties in that case eventually entered into a stipulation of dismissal. C-15-4052-CJW, Doc. No. 27.

Shortly after filing the above captioned case, West filed another pro se complaint, C14-4125-DEO. In that complaint, West alleged various CCUSO defendants were opening his mail. Judge O'Brien consolidated C14-4125-DEO with the above captioned case. Doc. No. 10. Judge O'Brien then directed appointed counsel to file one consolidated amended complaint, which she did. Doc. No. 12.

### III. RELEVANT FACTS

West's amended complaint contains five different claims. First, West alleges that the defendants were deliberately indifferent to a risk of sexual assault that West suffered while working at Tyson Industries. Next, West alleges that the defendants improperly forced him to disclose his mental health diagnosis to his Tyson employers. Third, West alleges that the defendants have read his legal mail. Fourth, West alleges that the defendants have engaged in retaliation for his past lawsuits. Finally, West alleges that the defendants have infringed on his religious liberty.

The parties agree to many of the relevant facts. As noted above, the State of Iowa committed West as a sexually violent predator in September, 2011. *West*, 2013 WL 988815 *1. West proceeded through the "phases" of treatment at CCUSO relatively quickly, earning "phase 5" in October, 2013.[2] Phase 5, or transitional release, allowed West to get a job outside of the CCUSO facility. He obtained employment at Tyson's meat processing plant in Storm Lake, Iowa. However, in August 2014, West failed to return to the CCUSO facility after his work shift. A few days later the U.S. Marshals Service captured him in Oklahoma. Following that incident, the Iowa District Court revoked his transitional release and West plead guilty to escape related charges.

West claims he was sexually harassed and assaulted while at Tyson. He blames the treatment he received at Tyson as the reason he absconded. West alleges that Ricardo Perez, his supervisor, and Rick Lipai, a co-worker, harassed and intimidated him while he was at Tyson. West said they made graphic derogatory remarks related to his status as a sex offender. West further claims Lipai burned West with a steam valve and grabbed him while he was nude taking a work-related shower.

West asserts he reported the incidents to Perez per the "chain of command." Reporting incidents to your supervisor was generally consistent with Tyson's policy, although it stated that if you were harassed by your supervisor you could seek out a HR supervisor directly. Following his return to Iowa, West also filed a police report and a grievance with the Iowa Civil Rights Commission. Neither was resolved in West's favor. Tyson also internally investigated the situation but took no action. Both Lipai and Perez denied anything happened.

West testified that he told CCUSO employees Jeremy Rowenbeck and Clint Frederiksen about the initial harassment he encountered at Tyson. He also stated that he "briefly mentioned" the sexual assault to CCUSO employee Byron Kelley, but

---

[2] The treatment "phases" at CCUSO have been explained in numerous other orders. *See, e.g.*, *Willis v. Palmer*, 175 F. Supp. 3d 1081, 1090-92 (N.D. Iowa 2016).

"didn't get a chance to go into the whole detail on it." The CCUSO employees testified that they did not recall West making specific complaints about working at Tyson, just general complaints about the nature of the work. West did not file any grievances with CCUSO about the situation, did not write any "kites" about it, nor did he request that he be allowed to get a different job. West also claims he kept a journal about the situation, but the defendants contend the journal West submitted is not accurate.

CCUSO directs patients to disclose their status as sex offenders when they are seeking employment. In addition, West's status as a committed sex offender is public record, as is the fact that he is required to register as a sex offender. The parties agree that Iowa Code § 229A.15 requires medical records to be sealed from the public. According to West, CCUSO employee Mike White told him to disclose that he was a sexual offender, with a mental abnormality of paraphilia not otherwise specified.

As will be discussed more below, CCUSO's general mail policy has been reviewed and approved by this court. Per the policy, CCUSO is directed to deliver legal mail unopened to the patients. On one instance, a piece of West's mail that should have been considered legal mail was opened outside West's presence. West filed a grievance consistent with CCUSO policy alleging his legal mail was opened outside his presence. That piece of mail was preserved and included in the parties' appendix. (Doc. No. 25-3 at 57.) CCUSO found, and I agree, that because of the way the return address was positioned on the envelope, it was impossible to see that letter was from the clerk of court. Instead, the letter appeared to be normal government correspondence. In an additional incident, defendant Reann Jackson allegedly read legal mail West was attempting to mail. Jackson denies this allegation. West filed a grievance. In response, defendant Wittrock sent an email to CCUSO staff reminding them that they were not allowed to read legal mail. West also claimed someone looked at legal documents in his room and on his flash drive.

4

The facts related to West's retaliation claim are sparse. He generally alleges that he was retaliated against for filing a lawsuit. He alleges he lost access to a DVD player. However, there were no disciplinary reports associated with this restriction. Additionally, West alleges that his lost access for religious materials was in retaliation for filing a lawsuit.

West belongs to a Pentecostal Christian church. At some point in the past, Pentecostal Pastor Jerry Greenwalt provided services at CCUSO, but had stopped doing so before the events giving rise to this case. West, upon earning transitional release, developed a relationship with Pastor Kevin Grimes and attended Grime's Pentecostal services in Spencer, Iowa. However, following his escape to Oklahoma, West was not allowed to leave CCUSO and was otherwise restricted to its highest security classification. Both his access to visitors and his access to the phone was restricted. At one point, he sought to call Pastor Grimes. Defendant Reinert initially told West that he could only call his attorney. However, within a few hours, West was informed he was allowed to call his pastor.

West also filed a kite asking for access to his pastor. However, CCUSO has no control over whether independent pastors are willing or able to work with CCUSO patients. The parties generally dispute the other religious services available at CCUSO, the frequency of the non-denominational services and the quality of the religious materials, such as books and vocational information, available. There is no real dispute that West has access to Bob Stout, the CCUSO chaplain, and to other common religious material at CCUSO. There is no dispute that West requested additional, in person, contact with a Pentecostal minister, but as Stout testified, CCUSO defendants have no control over whether outside pastors are willing to visit the CCUSO facility.

Related to both his free exercise and retaliation claims, a number of West's personal items were secured by CCUSO employees after his escape. Only certain items were returned to his direct control when he returned to CCUSO, as patients in CCUSO's secure facility are allowed less personal property than those who have

advanced to the transitional release, non-secured, part of the facility. During this process, certain religious items were secured by CCUSO employees. However, it is undisputed that West failed to file "kites" formally asking that the property be returned.

## IV.    SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party

6

moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis*, *Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V.    ANALYSIS

### A.    *Failure to Protect Claim*

West alleges that the defendants forced him to work at Tyson and to reveal to his Tyson co-workers that he is a sex offender. West alleges that because of his status as a sex offender, he was harassed and assaulted while working at Tyson. He contends CCUSO employees knew he was in danger at Tyson but ignored that danger.

## 1.    The parties' arguments

In their motion, defendants concede that in most situations they have a duty to protect incarcerated or committed individuals. They cite *Reynolds v. Dormire*, 636 F.3d 976 (8th Cir. 2011), for the proposition that the proper constitutional standard in this case is deliberate indifference. They then argue:

> There is insufficient evidence that the Defendants at CCUSO knew there was a risk of assault and were deliberately indifferent to that risk. Tyson's had a policy against harassment. Policies against harassment indicate that employers take harassment seriously and are concerned with the well-being of their employees. West admitted he did not follow the Tyson's policy. West claims he talked to Frederiksen about the harassment. Frederiksen denies it. West claims it was in his journals so McDonald should have known. The journals he produced in discovery, however, are not the same as those turned in to CCUSO. West admits that he never told any Defendant directly that he wanted a different job.
>
> . . . The alleged assault at issue occurred at Tyson's Foods. Mr. West admitted Tyson's is in control of security. CCUSO had no control over the environment at Tyson's. *Van Smith v. Franklin*, 286 F. App'x 373, 374-75 (9th Cir. 2008) (holding undisputed that parole officer defendants had no control over paroled SVP at jail and hospital, so no liability for failure to protect claim).

Doc. No. 25-2 at 8-9. Defendants also argue:

> The law is not clearly established that CCUSO Defendants have a constitutional obligation to protect patients outside its facility. Even if this Court finds that there was some obligation on Defendants to do something in this novel circumstance, that would be new law. Qualified immunity remains appropriate. *Hinshaw v. Smith*, 436 F.3d 997, 1002 (8th Cir. 1996) (stating standard whether legal norms allegedly violated were clearly established at the time of the challenged action); *Gorman v. Bartch*, 152 F.3d 907, 914-15 (8th Cir. 1998) (finding, under facts, that reasonable officials would not have known the ADA applied to transport of arrestees); *Offet v. Solem*, 936 F.2d 363, 366 (8th Cir. 1991) (holding governmental officials are not required to guess at their peril the development of constitutional doctrine).

*Id*. at 9-10.

West responds:

> [T]he state must protect those in its custody and second, the state also must protect individuals if the state created the particular danger to which the individuals are subjected. *Id.* at 799. By requiring Mr. West to work at Tysons and requiring that he disclose his status as a sex offender and his diagnosis, Defendants placed him in a dangerous situation. He was physically injured and sexually assaulted as a result. He was required by Defendants to maintain his employment in order to maintain his status in transition and his efforts to find alternate employment were rebuffed.

> Defendants argue that the law was not clearly established that they have an obligation to protect patients outside their walls. Yet these officials were involved in the selection of Tyson's as Mr. West's employer and required him to disclose information that subjected him to harassment at the workplace. Mr. West testified that he reported the harassment and defendants dispute his account of events. Defendants seem to want to rely on Mr. West's journals when it suits them but deny any knowledge of its contents elsewhere. Defendant Reinert testified that a review of Mr. West's journal revealed a possible relationship with a female that had not been disclosed in group therapy sessions. App. 173 (Fredericksen Dep. 17). Yet on the issue of failure to protect Mr. West from the risk that they created, they deny any knowledge of the content of those journals. If there is a genuine factual dispute regarding facts material to the case, there can be no summary judgment. *Greiner v. City of Champlin*, 27 F.3d 1346, 1352 (8th Cir. 1994).

Doc. No. 26-1 at 4-5.


## 2.    *Discussion*

"When a person is involuntarily confined in a state mental health facility, the State has a duty imposed by the Substantive Due Process Clause of the Fourteenth Amendment to provide a 'reasonably safe environment.'" *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006) (quoting *Beck v. Wilson*, 377 F.3d 884, 890 (8th Cir. 2004)). "To establish prison officials[3] failed to prevent harm, [the plaintiff] first

---

[3] The deliberate indifference standard arising under the Fourteenth Amendment for patients who have been civilly committed is the same as the deliberate indifference standard arising

must prove he was 'incarcerated under conditions posing a substantial risk of serious harm.'" *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "This is an objective requirement to ensure the deprivation is a violation of a constitutional right." *Holden*, 663 F.3d at 341. "Second, [the plaintiff] must establish the prison officials were deliberately indifferent to inmate health or safety." *Id.* "This is a subjective requirement, mandating the prisoner prove the official both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). "Th[e] requisite state of mind is akin to recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 835); *see also Triplett v. Palmer*, 592 F. App'x 534, 536 (8th Cir. 2015) (emphasizing that mere negligence on the part of officials is not sufficient to establish deliberate indifference).

The Eighth Circuit recently stated:

> The Due Process Clause generally does not provide a cause of action for "a State's failure to protect an individual against private violence." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). Our precedent establishes, however, that the Constitution requires a State to protect a person in two circumstances: when the person is in the State's custody, and when the State created the danger to which the individual is subjected. *See Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir.2011).

*Montgomery v. City of Ames*, 749 F.3d 689, 694 (8th Cir. 2014).

This case could present a complicated question about the extent to which CCUSO has a duty to protect a patient working at outside employment while on transitional release. There is little precedent to help determine whether West was "in-custody" while at Tyson, or whether the state created a danger by placing West at

_____

under the Eighth Amendment for prisoners. *Estate of Johnson v. Weber*, 785 F.3d 267, 272 (8th Cir. 2015)

Tyson. However, I need not reach that issue. As set out above, the appropriate standard in this case is the deliberate indifference standard, which asks whether there was a risk and whether defendants were deliberately indifferent to that risk. I will assume without deciding that there was a risk that defendants were responsible for, either because West was in custody or because defendants created the risk by placing West at Tyson. I will also assume that West has created a question of fact that he was harassed and assaulted while at Tyson.[4] Even assuming those two factors, there is no evidence that defendants were deliberately indifferent to his health or safety. West acknowledges that the most he did prior to his escape was mention, in passing, that he was being harassed at Tyson. He did not file any kites informing defendants of the harassment. He did not request a new job. He did not comply with Tyson's internal guidelines for reporting work place harassment or violence. Quite simply, he did nothing to put the defendants on notice of the situation. If defendants had no reason to know that West was being subjected to a hostile work environment at Tyson, they could not recklessly disregard that risk. Accordingly, defendants are entitled to summary judgment on this claim.

## B    Confidentiality Claim

### 1.    Parties' Arguments

Defendants argue that West cannot make a valid claim regarding confidentiality. They state:

> Mr. West himself disclosed true information. CCUSO does require
> that SVPs disclose their SVPS status and that they are on the Sex Offender

---

[4] Neither of these assumptions is actually supported by the record. West points to no case law that supports his assertion that defendant's liability could extend to his outside employment at Tyson. Moreover, the only evidence that West was harassed and attacked at Tyson are his own statements. While it is plausible that a CCUSO patient may face work place violence, it is equally plausible, as asserted by the defendants, that West's explanation that he escaped to Oklahoma to avoid work place violence was subterfuge and that West escaped because he knew he was violating CCUSO policy by engaging in an illicit relationship.

registry. Those facts are admitted. What is in dispute is whether Mr. West was required by CCUSO to disclose the "nature of his mental abnormality."

Doc. No. 27 at 2. Defendants argue:

> There is an open question in the Eighth Circuit whether disclosure of medical information states a constitutional violation. *Tokar v. Armentrout*, 97 F.3d 1078, 1084 (8th Cir. 1996) (granting qualified immunity where prison officials disclosed inmates HIV positive status). Assuming for the sake of this argument that it does, West's claim should fail for three reasons. 1) None of the named Defendants disclosed this information or required him to disclose it. West testified that Mike White – who is not a named defendant – advised him to disclose certain information during the hiring process. 2) West himself disclosed information in the job seeking process. 3) The information CCUSO recommends patients disclose is not confidential. A person's criminal record is public. See generally Iowa Code 22.2 (establishing the right of the public to records unless an exception is provided by law). The sex offender registry is public. And the order adjudicating Mr. West of having a mental abnormality and confining him to CCUSO is public. Iowa Code 229A.15 requires any psychological report, treatment records, or medical records to be sealed. This is the only part of the SVP commitment process that is protected from the public domain. All other pleadings and orders are public. *See, e.g., In re: Detention of West*, No. 11-1545, 2013 WL 988815 (Iowa Ct. App. Mar. 13, 2013) (discussing Mr. West's criminal history and mental abnormality).

Doc. No. 25-2 at 10-11. Defendants also note:

> The Ninth Circuit recently "join[ed] our sister circuits in holding that prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them." *Seaton v. Mayberg*, 610 F.3d 530, 534-5 (9th Cir. 2010). The court collected citations from other circuits in footnote 18, noting that the Second, Third, Fifth, Sixth, Seventh, Eighth, and Eleventh were in agreement.

*Id*. at 10 n.1.

West responds as follows:

> An individual has a constitutionally protect interest in avoiding disclosure of personal information. *Cooksey v. Boyer*, 289 F.3d 513, 515-16 (8th Cir. 2002)(citing *Whalen v. Roe*, 429 U.S. 589, 598, 97 S. Ct. 869, 51 L. Ed.2d 64 (1977)). Mr. West was required to disclose his status as a sex offender to his employer and his coworkers. This disclosure subjected him to harassment at his workplace. The sex offender registry certainly is public, along with certain documents related to the litigation that brought Mr. West to CCUSO. But neither the court order cited by Defendants' brief nor the decision of the Iowa Court of Appeals they reference identified the nature of his mental abnormality. *See In re: Detention of West*, 2013 WL 988815 (Iowa Ct. App.) and App. 142-43. The nature of that abnormality was not in those documents yet disclosure was required, both during the hiring process and to his supervisor at Tysons once he was employed, in violation of Mr. West's right to privacy.

Doc. No. 26-1 at 5.

### 2. *Discussion*

The parties are correct that the law regarding medical disclosure and privacy rights has not been clearly delineated by the Eighth Circuit. However, the Eighth Circuit recently considered a medical disclosure case from this district, and granted the defendants qualified immunity. In that case, *Willet v. Smith et. al.*, C11-4090-MWB, a CCUSO patient alleged that a CCUSO employee had disclosed the patient's medical information to a different CCUSO patient. *See Willet*, C11-4090-MWB, Doc. No. 73 at 1-3. This court assumed without deciding that the *Seaton* standard, referenced above, is correct, meaning that individuals have a constitutional right to privacy, but in the context of prisoners (and civilly committed patients) that right can be abrogated by a legitimate institutional interest. C11-4090-MWB, Doc. No. 73 at 2. In denying the defendants' summary judgment motion, the court found that there was no legitimate penological interest in disclosing the plaintiff's medical information. The defendants appealed, and in an unpublished *per curiam* decision, the Eighth Circuit found the

defendants were entitled to qualified immunity because the privacy rights were not clearly established. *Willet v. Smith*, 627 F. App'x 580 (8th Cir. 2016). However, the court did not expound upon the proper privacy standard. Accordingly, I will continue to assume that *Seaton* sets out the proper standard. *See e.g. Haid v. Cradduck*, No. 5:14-CV-5119, 2016 WL 3555032, at *5 (W.D. Ark. 2016) (drawing the same conclusion).

However, establishing the correct standard does not resolve the issues in this case because defendants do not argue that there is a legitimate institutional interest in the disclosing of West's confidential information. Rather, they argue: (1) West's information was not confidential; (2) no named defendant required West to disclose the information; and (3) defendants are entitled to qualified immunity. I agree on all three points.

First, the fact that West is a sex offender is a matter of public record. There is no violation in either disclosing that fact or requiring West to do so when he applies for jobs. West also argues that he was required to disclose his actual medical diagnosis. However, assuming that is true, and assuming that disclosing his mental health diagnosis would amount to a violation of his right to privacy, the person West alleges forced him to make the disclosure is not a party to this case. As noted above, according to West, CCUSO employee Mike White told him to tell Tyson that he was a sex offender, with a mental abnormality of paraphilia not otherwise specified. A claim against a person who is not a party to this case must fail.

Finally, in *Willet* the Eighth Circuit found CCUSO defendants entitled to qualified immunity in a privacy case where the facts viewed in the light most favorable to the plaintiff showed a clear privacy violation. Accordingly, because the *Willet* defendants were entitled to qualified immunity on the plaintiff's monetary claims, so too are these defendants. For all three reasons, defendants' motion for summary judgment is granted in regards to West's confidentiality claim.

## C.    Mail Claim

### 1.    The Parties' Arguments

Regarding West's mail claim, defendants note that this court has previously reviewed and approved CCUSO's mail policy and assert that they generally follow the policy. However, conceding that West has created a genuine issue of fact regarding whether certain defendants violated the policy on various occasions, defendants argue:

> Even if Mr. West is correct and staff opened or read between two and fifteen of his legal letters in contravention of CCUSO's policy, under qualified immunity mere negligence is not enough; he must show that the staff deliberately and knowingly violated his constitutional rights. *Garnder v. Howard*, 109 F.3d 427 (8th Cir. 1997). CCUSO has an appropriate and judicially approved policy on mail. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539 (1974) (discussing standard). Mr. West cannot mount proof that Reann Jackson knowingly read his mail in deliberate contravention of his rights. Nor can Mr. West prove who opened the other letter. He admits he does not know who opened it, but holds Wittrock responsible as the director. This is insufficient under 1983. *Gardner*, 109 F.3d at 430-31 (holding mail clerk who inadvertently opened a letter outside inmate's presence did not state a claim). "We have never held or suggested that an isolated, inadvertent instance of opening incoming confidential legal mail will support a § 1983 damage action. Rather, we agree with other circuits that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." *Gardner*, 109 F.3d at 431 (*citing Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir.1990); *see Morgan v. Montanye*, 516 F.2d 1367, 1370–71 (2d Cir.1975), *cert. denied*, 424 U.S. 973 (1976)). Further, Mr. West does not explain how an inadvertently opened, otherwise public document, interferes with his right to counsel or access to the courts.

Doc. No. 25-2 at 12-13.

> West responds:

> It is long established that those in state custody have the right to privacy in their legal mail. *Wolff v. McDonnell*, 418 U.S. 539, 577, 94 S. Ct. 2963, 2985, 41 L. Ed. 2d 935 (1974). Generally, it may be opened in the inmate's presence to inspect for contraband but may not be

read. This is said to be the policy at CCUSO yet Mr. West complains of numerous instances where the policy was not followed. His clearly marked legal mail was opened outside his presence and has even read by Defendant Jackson in his presence. Defendants assert that even if staff opened or read up to 10-15 pieces of Mr. West's legal mail this would amount to mere negligence. These are clearly not isolated instances. It is fine for CCUSO to have a policy regarding legal mail but they cannot hide behind their policy when it is clearly not followed and Mr. West's rights are repeatedly violated.

Doc. No. 26-1 at 6.


## 2. *Discussion*

To the extent West seeks to change CCUSO's mail policy, he is prohibited from doing so. CCUSO patients previously litigated the constitutionality of the mail policy as a class in *Taft et. al., v. Turner et. al.*, C05-4065-DEO. That action concluded with a settlement agreement that was accepted by this court. *Id.*, at Doc. No. 151. The agreement is binding on all parties and the class members waived and released all claims raised in the complaints. Accordingly, West's claims must be grounded in an allegation that CCUSO has violated the policy.

West claims that CCUSO violated its own policy and opened his legal mail outside his presence. As noted above, it is undisputed that on one instance a CCUSO official did open a piece of mail that should have been considered legal mail from a court. West followed proper grievance procedure and CCUSO's administration determined that the letter was insufficiently marked legal mail. On another occasion, West alleges Jackson read a piece of legal mail he was trying to send. West filed a grievance and CCUSO sent a reminder to staff about the proper legal mail policy. West also alleges that a flash drive with legal work was accessed by Jackson and other CCUSO employees. Finally, West alleges that his legal mail was opened several other times by Jackson and other CCUSO employees.

The constitutional right to legal papers and to be free from interference with legal mail are closely related to the access to courts. *Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997) ("The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts."). In addition, "[p]rivileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981). Additionally:

> The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts. The taking of legal papers will often (though perhaps not always) interfere with an inmate's right of access to the courts. We will not deny relief on the unsupported assumption that the papers involve only frivolous claims. Therefore, the destruction or withholding of inmates' legal papers burdens a constitutional right, and can only be justified if it is reasonably related to a legitimate penological interest.

*Goff*, 113 F.3d at 892.

Regarding his broad claims, West has failed to create a material issue of fact that his flash drive was accessed or that his mail was opened numerous times in violation of CCUSO's policy. He has presented no evidence, apart from his own suspicions, to support those claims. *See Anuforo v. C.I.R.*, 614 F.3d 799, 807 (8th Cir. 2010) (a self-serving allegation does not create a genuine factual dispute.) However, there are two instances in which West has provided support for his legal papers/mail claims: (1) the allegation that a particular item of mail was opened improperly and (2) the allegation that Jackson read a piece of legal mail.

Regarding the first, I agree with CCUSO that it was impossible for CCUSO employees to know that letter from the clerk of court was legal mail. The Eighth Circuit has stated that a mail claim must include an allegation that the state actor deliberately opened confidential correspondence. *See Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997). As I noted above, the letter at issue was not clearly marked

as legal mail.  Accordingly, it was accidently opened.  Under Eighth Circuit precedent an accidental opening is not a constitutional violation.

Regarding the second incident, during which Jackson allegedly read West's mail, there is no allegation that this was a mere "accident."  Thus, and viewing the evidence most favorably to West, a named defendant intentionally violated CCUSO's policy and read a piece of confidential legal correspondence.  However, it is firmly established that non-prejudicial, isolated incidents, cannot give rise to constitutional claims in this context.  *Beaulieu v. Ludeman*, 690 F.3d 1017, 1037 (8th Cir. 2012); *Gardner*, 109 F.3d at 430-31.  Because this is a lone isolated incident, with no allegation of prejudice, West has failed to allege a question of fact that can proceed to trial.


### D.     Retaliation Claim

#### 1.     The Parties' Arguments

Defendants argue:

> To show retaliation for the exercise of a federally protected right, Plaintiff must show: (A) that he exercised a constitutionally protected right; (b) that he was disciplined; and (c) exercising that right was the motivation for the discipline.  *Hanes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009).  West claims his constitutionally protected right is filing a lawsuit.  He admits, however, that he was not disciplined.  He describes what he seeks – like access to his DVD player – as privileges. CCUSO issues behavior reports as discipline.  *See, e.g., Swanson v. CCUSO*, 737 N.W.2d 300, 302-05 (Iowa 2007) (describing CCUSO's patient handbook sections on the phase and level system). Plaintiff cannot muster proof on the second element.  Given there was no discipline, there can be no animus behind the discipline, resulting in a failure of proof on the third element as well.  The record also shows that West did little to clarify the issue.  He testified that he spoke to one person about his property once, soon after he returned from jail.  He filed no kites. He filed no grievances.  Instead, he brought a federal claim.  Communication can solve many concerns.

Doc. No. 25-2 at 13.

West responds:

Privileges that should have been available to Mr. West due to his status in treatment were denied to him and he believes the deprivation was a result of retaliation by the Defendants. When he complains about his adverse treatment, he is told that they will be letting litigation handle it. App. 8 (West Dep. 30). Mr. West was denied access to his religious books and DVDs, his DVD player and was denied even phone contact with his pastor. Defendants see these as mere privileges but it is not only formal discipline that can be the basis for a prima facie case of retaliation. Adverse actions which show retaliation can include a denial of a privilege. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

Doc. No. 26-1 at 6.


### 2.    *Discussion*

The parties agree on the correct legal standard. As the Eighth Circuit has explained,

> In order to demonstrate retaliation in violation of the First Amendment under 42 U.S.C. § 1983, [an inmate] must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir.2004) (*citing Naucke v. City of Park Hills*, 284 F.3d 923, 927–28 (8th Cir.2002)).

*Spencer v. Jackson Cty., Mo.*, 738 F.3d 907, 911 (8th Cir. 2013).

West's allegations are similar to those in another recent CCUSO case, *Altman v. Palmer*, C13-4066-DEO, 2015 WL 1383824, at *8 (N.D. Iowa 2015). In that case, Altman alleged that he filed a lawsuit, which is undisputedly a protected activity, and was then denied various privileges at CCUSO including access to religious services. This court observed that the protected activity factor was met, and assumed without deciding that Altman had suffered an adverse action, but found Altman had failed to allege any facts that the adverse action was related to the protected activity.

The same analysis applies here. West did engage in a protected activity, and there may have been an adverse action.[5] However, there is absolutely no evidence connecting the protected activity and the subsequent adverse action. Without an issue of fact regarding the third factor – motivation – West's claim fails.[6]

### E.    Free Exercise Claim

#### 1.    Standard

In *Youngberg v. Romeo*, 457 U.S. 307 (1982), the Supreme Court held that the Fourteenth Amendment of the United States Constitution determines the rights of individuals who have been involuntary committed to a facility. *Id*. at 312. Although residents at state institutions do have constitutionally protected interests, these rights must be balanced against the reasons put forth by the State for restricting their liberties. *Id*. at 321. Because inmates retain their First Amendment right to the free exercise of religion in prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987), so too do civil detainees retain their First Amendment Rights.

In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Id*. at 89. The Court also

---

[5] The allegation regarding access to religious materials will be discussed in the next section. Regarding the other alleged adverse actions, such as loss of access to a DVD player, it must be noted that West had recently absconded from commitment when the alleged adverse actions took place. It is obvious that West would lose privileges and freedoms following an escape, and it would take a strong factual connection to suggest the loss of those freedoms was motivated by the filing of a lawsuit as opposed to the escape. Similarly, West's allegation that his failure to advance in treatment was a result of the lawsuit, as opposed to the escape, is nothing more than a self-serving allegation.

[6] West's claim fails for a number of other reasons. As noted by defendants, there is an open question as to whether the defendants knew that West had filed a lawsuit at the time of the alleged adverse actions. Although West had sent his pro se complaint to the court, it was several months before the court conducted an initial review, filed the complaint, and put the defendants on notice that a case had been filed. Additionally, West has failed to connect these adverse actions to any specific defendant.

recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id.*

In *Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012), the Eighth Circuit applied the *Turner* framework to civilly committed patients' free speech claims. Many courts have applied *Turner* in analyzing constitutional claims by civilly committed sexually violent predators. *See, e.g., Thompson v. Vilsack*, 328 F. Supp. 2d 974 (S.D. Iowa 2004) (applying *Turner* to a claim that co-payment for Kosher meals violated civilly committed sexual predator's First Amendment rights). This court has also used a modified *Turner* test on a number of occasions in analyzing free exercise claims arising out of CCUSO. *See, e.g. Altman*, 2015 WL 1383824.

In a typical prisoner free-exercise case, the plaintiff must allege a substantial burden on his free exercise of religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). Substantially burdening one's free exercise of religion means the regulation:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)(quotation and alterations omitted).

"A discussion of constitutional violations in a prison setting requires a two-step analysis. First, [the court] must determine whether the liberty interest asserted by an inmate is an interest protected by the Constitution. If [the court] find[s] a protected liberty interest exists, [the court] must balance this interest against a State's interest in prison safety and security." *Goff v. Harper*, 235 F.3d 410, 413-14 (8th Cir. 2000) judgment reinstated, 96-1018, 2002 WL 34541628 (8th Cir. Jan. 15, 2002). Under *Turner*, a prison regulation that impinges on inmates' constitutional rights … is valid if it is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89. As

modified for use in the context of civil commitment, the claim must be considered in light of appropriate therapeutic interests as well as relevant safety and security concerns.

"*Turner* employs a four-factor test to resolve this inquiry: (1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are ready alternatives to the regulation. *Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (internal citations omitted).

### 2.  *Parties' Arguments*

Defendants argue there is a rational relationship between the regulation at issue and the legitimate government interest advanced:

> Mr. West absconded.  He was the first and only CCUSO patient to abscond.  He left the state and required significant assistance from law enforcement to return him to CCUSO.  When he returned to CCUSO, his contact was restricted because of the security risk.  For several months, he did not ask to speak with his Pastor.  Even crediting his version of events with Nate Reinert, he asked to call his Pastor once.  It was denied.  The incident was investigated and clarified with staff that Mr. West can contact legal and spiritual advisors.
>
> CCUSO offers a nondenominational service.  Pastor Stout offers a live service, and the program offers DVD recordings of services when Pastor Stout is not available.  CCUSO offers special religious services when it can.  Pastor Grimes completed a declaration that he is willing to minister to Mr. West, including visiting with him at CCUSO as his schedule permits.  Pastor Grimes has been screened and is an approved visitor.  Pastor Stout testified that he's talked with several Pentecostal pastors and they don't want to come.  In addition to pastoral services, the CCUSO library contains religious materials.  Patients may also purchase religious materials. Mr. West's journal – both versions – contain

numerous references to Bible study that he is able to undertake on his own.

Doc. No. 25-2 at 15-16.  Defendants go on to argue:

> Plaintiff could attend Chapel.  He could view DVDs.  He could attend Bible study.  He could check out religious materials from the Library.  He could purchase his own religious materials.  He could follow up with a kite or grievance if he is concerned he's being denied contact with his Pastor.
>
> . . .  Defendants offer religious services.  Special services are brought in as available to meet the needs of the many different faiths at CCUSO.  A nondenominational service is offered to meet the needs of the many patients at CCUSO. . . .
>
> . . .  Plaintiff has many options for religious exercise available to him.  Pastor Bob offers live service, has more than 300 DVD services from other Pastors available, and has worked to find a Pentecostal pastor willing to minister to CCUSO patients – to no avail.  Although Pastor Grimes indicated he may be willing to provide some ministry services at CCUSO, that is up to Pastor Grimes and his demanding schedule.
>
> Plaintiff has no constitutional right to the pastor of his choice or the congregation of his choice.  *See, e.g., Myslicki v. Gage*, 2012 WL 728035 (W.D. Tex. Mar. 6, 2012) (slip copy) (holding inmate on supervised release failed to state actionable claim under RLUIPA for alleging inability to attend church of choice); *Calvin v. Caruso*, 605 F.3d 282, 291-92 (6th Cir. 2010) (holding institutions are not required to provide a place of worship for every faith); *Baze v. Parker*, No. 11-cv-P83, 2013 WL 3894961, at *4 (W.D. Ky. July 26, 2013) (holding inmate has no Constitutional right to the pastor of his choice); *Burridge v. McFaul*, No. 97-3950, 199 WL 266246, at *2 (6th Cir. Ap. 23, 1999) (*citing Thompson v. Kentucky*, 712 F.2s 1078, 1080 (6th Cir. 1983); *Payne v. Lucas*, No. 6:12-1904-DCN-KFM, 2012 WL 4847124, at *2 (D.S.C. July 19, 2012) (finding prisoners are not entitled to have the clergyman of their choice provided at correctional facilities); *Farnsworth v. Baxter*, No. 03-2950-B/V, 2005 WL 2373417, at * 5 (W.D. Tenn. Sept. 27, 2005) (same).  The Eighth Circuit has found no violation of Free Exercise when confined persons complained that no volunteers could be found to lead the desired service.  *Strutton v. Meade*, No. 05-cv-2022, 2010 WL 1253715 (E.D. Mo. Mar. 31, 2010) (unpublished), aff'd 668

F.3d 549 (8th Cir. 2012) (SVP institution's decision to deny a second Wiccan service for lack of a volunteer does not state a claim). CCUSO is providing a variety of means of religious expression.

Doc. No. 25-2 at 16-17.

West responds:

Plaintiff has been denied the ability to practice his Pentecostal religion at CCUSO. Plaintiff was enjoying regular meetings with his pastor, regular phone calls and Bible study while in transition but was completely cutoff once he returned. There is no dispute about Mr. West's sincerely held religious belief. To establish a claim of denial of constitutional right to the free exercise of religion, the plaintiff must show both a sincerely held religious belief and the infringement upon that belief. *Hayes v. Long*, 72 F.3d 70, 73 (8th Cir. 1995). While his travel to church was understandably curtailed, there was no justification for denying religious books and study materials and phone contact with his spiritual advisor.

. . .

The Defendants claim their in-house chaplain should be a sufficient substitute for Mr. West. Yet Pastor Stout is not having regular nondenominational services and Plaintiff is not able to attend Pentecostal services. Defendants argue that he should be satisfied with watching DVD's, yet his DVD player was confiscated along with his religious DVDs and not returned until after this suit was commenced. In the past, Pentecostal ministers had refused to come to CCUSO but Pastor Grimes had been willing to meet with Plaintiff on a regular basis, both inside CCUSO and while Mr. West was able to travel to his church. Pastor Grimes is willing to meet with Mr. West at CCUSO and will consider holding services there. The Defendants finally allowed Plaintiff to make phone calls to Pastor Grimes after this lawsuit commenced. There has been no sufficient substitute provided and Mr. West's right to free exercise of his religion remains infringed.

Doc. No. 26-1 at 7-8.

### 3. Discussion

As noted above, this court has twice previously had the opportunity to consider the religious services available at CCUSO. *See Altman*, 2015 WL 1383824, at *7, and *Mead*, 2014 WL 2557673, at *6. The second of those cases also dealt with a Pentecostal CCUSO patient who complained that CCUSO employees interfered with his free exercise of religion. In that case, this court discussed the difficulty CCUSO employees have had in finding ministers willing to come to CCUSO and concluded that, "[CCUSO employees] do not have the power to compel a minister to come to CCUSO." *Mead*, 2014 WL 2557673, at *6. The court granted summary judgment in favor of the defendants, concluding:

> Mr. Mead has failed to allege a constitutional violation under the *Turner* framework: 1) There is a rational relationship between CCUSO's religious regulations and a legitimate government interest. The Defendants provide various non-denominational religious services and provide specific Pentecostal material and videos to Mr. Mead. The Defendants do not have the authority to compel a Pentecostal minister to come to CCUSO. But CCUSO has made Pastor Greenwalt aware that he is welcome to minister to Mr. Mead if he chooses to do so. 2) Mr. Mead is allowed alternate means to exercise his faith. As mentioned above, the Defendants have provided Pentecostal videos. Additionally, Mr. Mead is allowed to attend other, non-denominational Christian services, which Pastor Greenwalt testified are similar to Pentecostal services. 3) The Defendants are willing to let a Pentecostal minister pastor to Mr. Mead. None appear to be willing. The Defendants are attempting to provide Mr. Mead an opportunity to exercise his religion that is within CCUSO's resources. 4) There is no ready alternative to this situation. The Defendants provide Mr. Mead access to Pentecostal videos and other Pentecostal material. They have told Pastor Greenwalt he can minister to Mr. Mead. They have tried to get other Pentecostal ministers to come to CCUSO. But, all they can do is ask. The Defendants do not have the power to compel a minister to come to CCUSO. In short, the Defendants are doing all that they can. As long as they continue to do so, Mr. Mead does not have a free exercise claim under the Turner framework discussed above. Accordingly, the Court must grant the Defendants' Motion for Summary Judgment, Docket No. 31.

*Id*.

The factual record in this case demonstrates that the situation regarding access to religious services at CCUSO remains largely the same, and I agree with the analysis and conclusions set forth in *Mead*. Accordingly, to the extent West alleges a general denial of his right to free exercise because CCUSO does not provide specific Pentecostal services, he has failed to generate a disputed issue of material fact for the reasons set forth in *Mead*. Similarly, to the extent West argues he has been denied a right to free exercise because he is not allowed to attend services outside of the CCUSO facility, that claim is also denied for the reasons set out in *Mead* and *Altman*.

Of course, West's situation is somewhat different than Mead's in that West had been on transitional release and, therefore, had been allowed to attend religious services outside the CCUSO facility prior to his escape. West had also developed a relationship with Pastor Grimes. West specifically alleges that following his return to CCUSO after the escape, he was restricted from contacting Grimes and was restricted from watching his religious DVDs.

Applying the *Turner* framework to these specific allegations, it is clear that West has failed to allege sufficient facts to allow his claim to proceed. First, there is a rational relationship between CCUSO's religious regulations and a legitimate government interest. Defendants provide various non-denominational religious services and provide specific Pentecostal material to patients such as West. Defendants do not have the authority to compel a Pentecostal minister to come to CCUSO. But CCUSO has made Pastors Greenwalt and Grimes aware that they are welcome to minister to West if they so choose.[7] Similarly, defendants' decision to restrict West's privileges, including access to items such as a personal DVD player, are rationally related to a

---

[7] Grimes stated that the only reason he thought he could not come to CCUSO was because West told Grimes that West was barred from having visitors. Doc. No. 25-4 at 156-57. Grimes otherwise gave no indication that he had been prohibited from contacting West and acknowledged exchanging letters with West. *Id*.

legitimate government/therapeutic interest. West absconded from treatment. Demoting him from transitional release and subjecting him to the more restrictive rules of the earlier treatment stages is a rational response to that escape.

Second, West was allowed an alternate means to exercise his faith. Although, for a time, he was not allowed to access all the personal property he had amassed while on transitional release, he still had access to the religious materials that all secure-unit CCUSO patients were permitted to access. As noted above, this included Pentecostal videos. West is also allowed to attend other, non-denominational Christian services officiated by Pastor Stout. While it is true that West was briefly prohibited from calling Grimes, West has cited no authorities supporting his assertion that he has a constitutional right to call his preferred religious officiant. Regardless, the situation was quickly clarified such that West was allowed to make religious calls. As discussed above, a brief, accidental denial of a constitutional right is not sufficient to prevail on a Section 1983 claim under current Eighth Circuit precedent.

Third, defendants are willing to allow Pentecostal ministers to communicate with West and conduct services at CCUSO. Other than West's unsupported, self-serving allegations, the remainder of the record demonstrates that defendants are making reasonable attempts to facilitate West's religious exercise in a manner that is commiserate with his treatment level.

Fourth, there is no ready alternative to this situation. Other than briefly denying West the use of the phone, defendants have provided West an opportunity to exercise his faith in a manner consistent with his security and treatment levels. Accordingly, defendants are entitled to summary judgment on this issue.

## VI.    CONCLUSION

For the reasons set forth herein, defendants' motion (Doc. No. 25) for summary judgment is **granted** with regard to all claims.  This action (C14-4102 and C14-4125) is hereby **dismissed with prejudice**.  Judgment shall enter against the plaintiff.

**IT IS SO ORDERED.**

**DATED** this 17th day of August, 2017.

_____
Leonard T. Strand, Chief Judge